IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN HOWARD, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 17-1548-RGA |
| MICHAEL LITTLE, | : |
| Defendant. | : |

Kevin Howard, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Carla Anne Kingery Jarosz, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

July 14, 2020
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Kevin Howard, an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, commenced this action pursuant to 42 U.S.C. § 1983. (D.I. 2). He proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4, 9). Before the Court are Howard's motion for an order to amend the Court's February 4, 2020 Order and motions to compel (D.I. 56, 63, 64) and Defendant's motion for summary judgment (D.I. 65). Briefing is complete. (D.I. 67, 74, 75).

I.   **BACKGROUND**

The case proceeds against Defendant Michael Little on Count I of the Verified Amended Complaint. (*See* D.I. 22; D.I. 34). A verified complaint is treated as an affidavit in the summary judgment posture. *Real Alternatives, Inc. v. Secretary Dep't of Health & Human Services*, 867 F.3d 338, 371 n. 9 (3d Cir. 2017). Count I alleges retaliation by Little, who at the time was employed as a legal services administrator at JTVCC. (D.I. 22 at ¶¶ 28-43). In this position Little oversaw the four libraries at JTVCC and one of his duties included hiring inmates for inmate law clerk positions. (D.I. 66-4 at 1-2). Howard alleges retaliation when Little did not hire him in the JTVCC law library because Howard was a litigant in a pending civil action against Department of Correction ("DDOC") officials that he and other inmates had filed in the Delaware Court of Chancery. (D.I. 22 at 28). Howard alleges that Little's actions deterred him from filing a contemplated civil action against the JTVCC inmate commissary fund and a § 1983 action for an inadequate law library and inadequate legal assistance. (*Id.* at ¶¶ 33, 34).

1

Howard wrote to Little in September 2013 and requested a job in the JTVCC law library. (D.I. 22 at ¶ 15; D.I. 66-1 at 1). On September 24, 2013, Little responded that, at the time, he would not consider hiring Howard, and, that to be considered for employment in the law library, Howard must be infraction free for one year and either have current employment or possess the requisite education or experience to be hired immediately. (*Id.* at ¶ 16).

On November 3, 2014, Howard, along with other inmates, filed an action in the Court of Chancery against former DDOC Commissioner Robert Coupe, then DDOC Commissioner Perry Phelps, and then JTVCC Warden David Pierce, C.A. No. 10307-VCN, but did not name Little as a defendant. (D.I. 22 at ¶ 22); *see Hall v. Coupe*, 2016 WL 3094406 (Del. Ch. May 25, 2016).

Howard wrote to Little on July 9, 2015, and advised Little that he had obtained a paralegal certificate of completion and was resubmitting his name for a job in the law library. (D.I. 22 at ¶ 17). Little responded that there were no positions available. (D.I. 66-1 at 2).

In September 2015, Little opened a position for an inmate law clerk in the main JTVCC law library. (D.I. 66-4 at 4). Little states that the qualifications for an inmate law clerk included that:

> the inmate be writeup free for one year, be computer literate, and either have a job or relevant work experience or knowledge. Inmate law clerks are responsible for assisting inmates with their legal needs in the law library including interviewing inmates about their confidential legal matters. They interact with both civilian and inmate populations and are allowed privileged access to the library's copier machines, controlled legal reference material, confidential inmate legal material and library supplies.

(D.I. 66-4 at 2). Little hired inmates who could get along with others, but not be bullied; would not take advantage of the law library's copying machine to make betting slips or pornography; and would be able to keep the confidences of other inmates. Little states that having pending or prior litigation against the DDOC or any of its staff, including Little, had no bearing on whether he hired an inmate for an inmate law clerk position. (*Id.*).

In September 2015, Howard spoke to paralegal Maria Lyons about the position that had become available at the JTVCC law library, and she told Howard the criteria for employment in the law library was the inmate: (1) must be computer literate; (2) had filed no litigation against the DDOC; and (3) had no disciplinary write-ups within one year. (D.I. 22 at ¶¶ 18, 19).

On September 8, 2015, Howard sent a memo to Little and asked to be assigned to an open law library position. (D.I. 48 at 25). According to Howard, he met the criteria for the position: he had a prison job, had no disciplinary report for over one year, and he had a certification of completion of paralegal studies. (D.I. 66-2 at 8). At the time Howard had a pending lawsuit against the DDOC. (*Id.*).

Little does not recall Howard applying for the position and he did not interview him. (D.I. 66-4 at 4). He states that inmates frequently sent him letters requesting a law library job, but he did not consider or store requests when he was not actively seeking an inmate law clerk. (*Id.* at 3). Little states that he would respond to each request and advise the inmate that a position was not currently open. (*Id.*).

Little's standard procedure when actively seeking an inmate law clerk was to:

3

(1) create a notice for the position and give it to the civilian staff to post in the main law library; (2) collect the applications; (3) consult current civilian and inmate staff of the law libraries and members of the Institutional Based Classification Committee about the applicants and ask about temperament, experience, institutional reputation and record; and (4) interview candidates and select the best one for the position. (*Id.* at 3). Little states that the balance of personalities in the law library is of crucial importance to the safety and security of the prison. (*Id.*). Little interviewed several inmates and hired inmate William Hudson because he had a good institutional record, was calm, cool, level-headed, and contributed to the balance in law library.[1] (*Id.*) Little was not aware if Hudson had filed litigation against the DDOC or any of its staff. (*Id.*).

On October 27, 2015, Howard learned that he had not been hired for the inmate law clerk position. (D.I. 66-2 at 5). According to Howard, on that day he asked Little why he was not hired for the law library job and was told that he was not considered because of his pending litigation against the DDOC. (D.I. 22 at ¶¶ 20, 21). Little denies that he told Howard he did not hire him because of the Chancery Court lawsuit. (*Id.*). According to Little, he was not aware of the lawsuit Howard had filed against DDOC officials in Chancery Court until he received the lawsuit in this case. (D.I. 66-4 at 4). Howard submitted a document that shows Little investigated a grievance submitted by Howard on December 11, 2014, regarding law library time. (D.I. 61-11 at 1). Little

---

[1] All law library inmate clerks are required to sign a document upon their acceptance of the job agreeing to fulfill the responsibilities of the position and to adhere to a list of rules for behavior including not accepting money from inmates for work performed, not taking work related items out of the library, and not working on their own legal work while they are on shift. (D.I. 66-5 at 1-2). Inmate law clerks are permitted to work on their own legal cases in the law library when they are off-duty. (*Id.* at 2).

4

stated in the investigation report that Howard "does have active litigation" but it does not identify the litigation. (*Id.*).

Howard submitted affidavits from several inmates, all of whom stated a criterion for consideration of an inmate law clerk position is that the inmate have no active litigation against the DDOC or the prison or no history of filing litigation against the DDOC. (D.I. 66-3 at 16-19). Little submitted a document that shows between November 2011 and September 2015, several inmate law clerks had filed litigation against the DDOC or DDOC officials, either prior to or during their employment. (D.I. 66-6 at 1-2; D.I. 66-7 at 1-2).

On November 2, 2015, Howard submitted a grievance complaining of retaliation when Little did not employ him in the law library because Howard had filed suit against the DDOC. (D.I. 22 at ¶ 23). On May 24, 2016, the Chancery Court dismissed the lawsuit filed by Howard and other inmates. *See Hall v. Coupe*, 2016 WL 3094406 at *1.

## II.   DISCOVERY MOTIONS

### A.   Motion for an Order to Amend the Court's February 4, 2020 Order

On February 20, 2020, the Court denied Howard's motion for an order to obtain the location of persons with discoverable information. (D.I. 55). The Court determined that Howard had attempted to use the Court as a means to side-step prison administration security measures and that he provided no basis why he wanted to locate certain individuals. (*Id.*).

Howard seeks to amend the order. (D.I. 56). He states that he is not attempting to circumvent DDOC policy. Rather, he is attempting to secure witnesses for trial, he provides a description of the testimony anticipated from each proposed witness, and

requests subpoenas to find out what other relevant information they may have. In the alternative, he requests counsel or requests that Little stipulate to paragraphs one through five of the motion. (*Id.*) Little did not respond to the motion.

As discussed below, Little's motion for summary judgment will be granted in part and denied in part. As a result, this matter will proceed to a bench trial. The testimony Howard describes seems to be duplicative of what is already contained in the record. At this juncture, I am not inclined to side-step prison rules designed to preserve internal order and maintain institutional security. In addition, Howard has made no showing that he has the financial resources to pay witness fees and costs under 28 U.S.C. § 1821, for either depositions or trial testimony. *See Jacobs v. Heck*, 364 F. App'x 744, 748 (3d Cir. 2010) (district court did not err in requiring indigent prisoner to "pay the fees and costs for any prison official he wished to subpoena for trial"); *Hill v. Lappin*, 2020 WL 708927, at *3 (M.D. Pa. Feb. 12, 2020) (denying request for subpoenas because indigent prisoner had "not demonstrated that he has the means to pay all costs associated with a witness's appearance"); *Ledcke v. Pennsylvania Dep't of Corr.*, 2016 WL 74769, at *5 (M.D. Pa. Jan. 7, 2016) (collecting cases and noting that "plaintiffs-including those proceeding *in forma pauperis*--are required to pay the fees and costs for non-incarcerated witnesses who are subpoenaed to testify at . . . trial").

Finally, the Court denies Howard's renewed request for counsel. This case raises one issue, is not complex, and Howard has ably represented himself. Therefore, the request will be denied.

Accordingly, Court will deny the motion to amend the February 4, 2020 Order. (D.I. 56). Howard may raise the issue of trial witnesses during the pretrial conference which will be held at a later date, yet to be determined.

**B.     Motions to Compel**

Howard has filed two motions to compel. (D.I. 63, 64). The first motion (D.I. 63), seeks an order compelling Little to respond to Howard's second set of interrogatories and document requests on the grounds that Little did not timely respond to the requests. Little responds that he has responded to the discovery requests and, therefore, the motion to compel at Docket Item 63 is moot. (D.I. 67 at 2). The court docket reflects this is the case. Therefore, the motion to compel (D.I. 63) will be dismissed as moot.

The second motion (D.I. 64) seeks an order to compel Little to fully answer Howard's second set of interrogatories and to produce documents. Howard specifically refers to Interrogatories Nos. 1, 7, 9, 13, 20, and 21. (*Id.* at 2-3). Howard also contends that Little did not adequately respond to production requests 1-20 and that Little's attorney has the legal right to obtain the documents on demand from a state agency. He seeks counsel to assist in obtaining requests 21-25 because, as a prisoner, the information sought is not available under 11 Del. C. § 4322.

In response, Little indicates that he has been retired from the DDOC for over a year, he answered the questions to the best of his knowledge and, to the extent he did not provide dates or specific names, it is because he did not know them. (*Id.*). Little indicates that he provided documents in the possession or control of the DDOC because he was employed by the DDOC during the relevant time-frame. (*Id.*). For those documents Plaintiff seeks from the Office of Management and Budget, Little

7

states that he has never been employed by it, is not in possession or control of those documents, and does not have a responsibility to subpoena it to obtain documents for Howard. (*Id.*). Finally, Little opposes counsel on the grounds that counsel has previously been denied, the case is limited to one claim of retaliation against one defendant, and the case is not so factually or legally complex that requesting an attorney is warranted. (*Id.*).

Pursuant to Fed. R. Civ. P. 26, ["p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Court has reviewed the answers to interrogatories. Little adequately answered Interrogatories Nos. 1, 7, 9, 13, 20, and 21. Little cannot provide answers when he does not know the answer or does not remember specifics. Nor is he required to provide responses in the manner Howard believes he should. In addition, Little objected to, yet still answered, Interrogatories Nos. 13, 20, and 21.

The Court has also reviewed the requests for production of documents. Little adequately responded to Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 21-25. To the extent Little objected to the foregoing requests and Howard still seeks the documents, the objections are sustained. With regard to Request No. 1, if Howard has the financial

8

ability to do so, he may seek documents from the Office of Management and Budget by subpoena.

I am aware that Little is no longer employed by the DDOC and, therefore, no longer has access to certain documents. He is, however, provided a defense by the State of Delaware and, therefore, he will be required to produce documents to the extent they exist and are located within the DDOC and, more particularly, at the JTVCC, including to Request Nos. 8, 9, 11-14, and 16-20.

As discussed above, Howard's renewed request for counsel will be denied.

Accordingly, the second motion to compel (D.I. 64) will be granted in part and denied in part.

## III.   SUMMARY JUDGMENT

### A.   Legal Standards

"Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Drumgo v. Kuschel*, __F. App'x __, 2020 WL 2316047, at *2 (3d Cir. May 11, 2020) (citing Fed. R. Civ. P. 56(a)). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v.*

9

*Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Id.* at 324. To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.

There is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### B.   Discussion

#### 1.   Retaliation

Little moves for summary judgment on the grounds that the retaliation claim fails as a matter of law, he is immune from suit by reason of qualified immunity, and he cannot be held liable under 42 U.S.C. § 1983 for claims raised against him in his official capacity. (D.I. 66). Howard opposes the motion on the grounds that there are disputed issues of material fact, he has established the elements of a retaliation claim, and Little

is not entitled to qualified immunity.  Howard did not address the issue of Little's immunity from suit for claims raised against him in his official capacity.

A prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights,[2] and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Sloan v. Pennsylvania Dep't of Corr.*, 800 F. App'x 143, 148 (3d Cir. 2020) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001))).  Filing a state court lawsuit is constitutionally protected conduct.  *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981).

The causation element usually[3] requires a plaintiff to prove "either:  (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422  (3d Cir. 2016); *Brant v. Varano*, 717 F. App'x 146, 149–51 (3d Cir. 2017).

---

[2]   "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than de minimis.'" *Sloan*, 800 F. App'x at 148 (quoting *Watson v. Rozum*, 834 F.3d at 423).

[3]   I say "usually" because here Plaintiff offers direct evidence; usually a plaintiff relies only upon circumstantial evidence.  *See Watson v. Rozum*, 834 F.3d at 422 ("Because motivation is almost never subject to proof by direct evidence," inmates "must rely on circumstantial evidence to prove a retaliatory motive.").

"[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Id.*

Defendant does not contest Howard's showing that he has met the first two elements of a retaliation claim: he engaged in constitutionally protected activity when he filed the November 3, 2014 lawsuit, and he was subjected to adverse action when Little did not hire him for the inmate law clerk position. (D.I. 66 at 8). The Court turns to the next element - causation.

Little contends that Howard fails to establish causation and argues there is no suggestive temporal proximity, pointing to the almost one year between the filing of the November 3, 2014 complaint and Little's failure to hire Howard in September or October 2015. Timing itself may be "sufficient to establish" that retaliation was a substantial or motivating factor, but "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive. *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003). "[T]iming plus other evidence may be an appropriate test where the temporal proximity is not so close as to be 'unduly suggestive.'" *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 130 (3d Cir. 2000).

Here, there remains a material issue of fact whether Howard was not hired for a prison law clerk position in retaliation for his pending Chancery Court litigation against

12

DDOC employees. Howard produced a memo dated September 8, 2015, asking to be assigned to the open law library position.[4] Little states that he does not recall Howard applying for position. Little did not interview Howard. Howard states that Little told him he was not hired because of the pending litigation, while Little states that he knew nothing about the litigation until he was notified of the instant lawsuit.[5] Howard provided affidavits of inmates who state that an inmate's litigation against the DDOC was considered in the hiring process, while Little states that an inmate's prior or pending litigation had no bearing on whether the inmate was hired. Accordingly, there is a genuine issue of material fact on the issue of causation.

The issue of causation, however, does not end the analysis. Assuming arguendo that Howard met his burden of proving a prima facie case of retaliation, the Court must determine whether Little met his burden to show that he would have made the same decision to hire Hudson absent Howard's protected conduct for reasons reasonably related to a legitimate penological interest. *See, e.g., Davis v. Harlow*, 632 F. App'x 687, 691 (3d Cir. 2015) (in summary judgment context, "prison officials may still prevail

---

[4] Little suggests that Howard did not actually apply for the position because Howard's memo is not date-stamped and Howard did not produce an accompanying denial memo as was standard practice for Little. (*See* D.I. 66 at 5 n.1). Howard, however, produced a memo indicating that he did apply for the position and, as the non-moving party, the Court construes the evidence in the light most favorable to Howard.

[5] A fact-finder could consider the grievance investigation report submitted by Howard as supporting his position that Little was aware of the Chancery Court litigation. While it does not identify the litigation as the Chancery Court litigation, it indicates that Howard had pending litigation. The fact-finder could conclude that if Little knew that Howard had litigation, that fact made it more likely that he knew what that litigation was.

by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest").[6]

In his declaration, Little indicates that inmates repeatedly sought jobs in the law library and that openings were infrequent. He lists the qualification and characteristics he required when hiring inmate law clerks. In addition to legal and computer skills and the ability to maintain a job, for the safety and security of the inmates and civilians in the law library, Little hired inmates who could get along with others, would not be bullied, would not take advantage of the copying machine, and who could keep the confidences of other inmates. After interviewing several inmates, Little states that he hired Hudson because he had a good institutional record, was calm, cool, level-headed, and contributed to the balance in the law library. While Little provides reasons for hiring Hudson, Little does not explain or provide facts why he hired Hudson over Howard. The Court is unable to glean from Little's declaration whether Little would have made the same decision to hire Hudson absent Howard's protected conduct for reasons reasonably related to a legitimate penological interest. In viewing the evidence and all justifiable inferences in the light most favorable to Howard, the Court finds that at this stage of the litigation, Little has not produced sufficient evidence to show a non-retaliatory justification for his actions.

---

[6] The Court of Appeals, like other courts of appeals, adopted this burden-shifting standard from employment law. *Rauser v. Horn*, 241 F.3d at 333-34. It seems to make more sense in the disciplinary context, where the focus is on what happened to the plaintiff. Here, once the burden shifts to Defendant, the focus is on the person hired. Given the desirability of the inmate law clerk job, it would seem in the usual case a difficult task for an inmate to dispute a prison official's explanation for the hiring decision.

14

Because there remain issues of fact, the motion for summary judgment on the retaliation claim will be denied.

### 2. Qualified Immunity

Little raises a qualified immunity defense stating, "if the Court determines there is sufficient evidence to support a claim for retaliation," he is entitled to qualified immunity because "it is not clearly established that failing to hire an inmate for a particular job is an adverse action which is required to substantiate a claim of retaliation." (D.I. 66 at 10).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, __U.S.__, 139 S. Ct. 500, 503 (2019) (per curiam) (quoting *Kisela v. Hughes*, 584 U.S.__, 138 S.Ct. 1148, 1152 (2018) (per curiam)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). The clearly established right must be defined with specificity, and the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam).

While the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009); *see also Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (noting that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.")

Here, qualified immunity is not warranted because there is a genuine dispute of material fact, inasmuch as no reasonable officer could conclude that the refusal to hire a qualified inmate for a prison job in retaliation for the exercise of his First Amendment rights comports with the Constitution.[7] *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 529-30 (3d Cir. 2003). Given the unresolved questions of fact as to retaliation claim, it would be premature for the Court to determine the issue under the disputed facts presented by the parties.

Therefore, the Court will deny that portion of the motion for summary judgment on the grounds of qualified immunity.

### 3. Official Capacity Claims

Finally, Little moves for summary judgment on the claims raised against him in his official capacity. Howard did not oppose this portion of Little's motion. Howard's claims against Little in his official capacity are prohibited by the Eleventh Amendment. *See Stevenson v. Carroll*, 474 F. App'x 845, 848 (3d Cir. 2012) Barring consent, a state

---

[7] Little argues that it is not clearly established that failing to hire an inmate for a particular prison job is an adverse action, a required element of retaliation. (D.I. 66 at 10-11). In taking this position, Little relies upon *Kelly v. York Cty. Prison*, 340 F. App'x 59, 61 (3d Cir. 2009); *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017), and *Pepe v. Lamas*, 679 F. App'x 173, 175 (3d Cir. 2017). The cases do not support Little's position. These cases considered adverse actions for the purposes of retaliation to include: (1) the failure to hire an inmate for a prison job, *Kelly v. York Cty. Prison*, 340 F. App'x at 61; (2) the termination of an inmate's prison employment as an "Inmate Legal Reference Aide," *Wisniewski v. Fisher*, 857 F.3d at 157; and (3) the failure to reinstate an inmate to his prison "kitchen job," *Pepe v. Lamas*, 679 F. App'x at 175.

I am not entirely sure how much sense Little's qualified immunity argument makes. He is not arguing that the constitutional right is not clearly established. Instead, he is arguing that the particular form of adverse action is not clearly established to be an adverse action. It would be the equivalent of, in an excessive force case involving an accusation that an officer head-butted a prisoner, arguing that no previous case had ever involved head-butting so the officer was entitled to qualified immunity.

or one of its agencies is immune from suit in federal court under the Eleventh Amendment. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631 (2000). The Eleventh Amendment bars a suit for monetary damages against state officials sued in their official capacities. *Stevenson v. Carroll*, 474 F. App'x at 848 (citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990)).

Accordingly, the Court will grant that portion of the motion for summary judgment on the claims raised against Little in his official capacity.

## IV.  CONCLUSION

For the above reasons, the Court will: (1) deny Plaintiff's motion for an order to amend the Court's February 4, 2020 Order (D.I. 56); (2) dismiss as moot Plaintiff's first motion to compel (D.I. 63); (3) grant in part and deny in part Plaintiff's second motion to compel (64); and (4) grant in part and deny in part Defendant's motion for summary judgment (D.I. 65).

An appropriate order will be entered.