IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEVIN HOWARD,

        Plaintiff,

v.

MICHAEL LITTLE,

        Defendant.

Civil Action No. 17-1548-RGA

TRIAL OPINION

Evan O. Williford, THE WILLIFORD FIRM LLC, Wilmington, DE.

    Attorney for Plaintiff.

Victoria Sweeney, Kenneth Lee-Kay Wan, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

    Attorneys for Defendant.

November 22, 2021


**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Kevin Howard, an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, commenced this action on Oct. 31, 2017 pursuant to 42 U.S.C. § 1983. (D.I. 2). In the operative complaint, he alleges that Michael Little unconstitutionally retaliated against him by not hiring him for a job opening in September 2015 in the JTVCC law library. (D.I. 22 ¶¶ 28).

Howard moved that a lawyer be appointed to represent him at the bench trial. (D.I. 88). I granted the motion and appointed counsel.[1] There were two days of testimony (D.I. 121; D.I. 122, hereinafter referred to as "Tr."), a post-trial brief (D.I. 116), closing argument, a supplemental evidentiary submission (D.I. 119), and a letter in response to the supplemental evidentiary submission (D.I. 120). My findings of fact and conclusions of law follow.

I.  **FACTUAL BACKGROUND**

Little was the Legal Services Administrator at JTVCC from 2002 to 2019. (Tr. 216:7-9). As Legal Services Administrator, Little was responsible for hiring inmates to work in the JTVCC law libraries. (Tr. 249:18-21). Inmates were informed of open positions via physical postings on the windows of the law library and broadcasted announcements on JTVCC's internal TV information channel. (Tr. 223:22-24; 224:12-23). Inmates applied by submitting letters of interest. (Tr. 224:3-9). Little would then review the letters, select a pool of applicants to interview, and make a hiring decision based on the interviews. (Tr. 224:5-9).

In September 2013, Howard wrote Little a letter requesting a job in the law library. (Tr. 166:19-20). Little responded with a memorandum dated Sept. 24, 2013, informing Howard he would not be considered for the position because (1) he had not been "write-up free for a period

---

[1] I thank appointed counsel, Evan Williford, for his diligent representation of Plaintiff.

1

of one year prior to hiring," and (2) he was not "currently employed" and did not "possess the education/experience that would qualify [him] to be hired immediately." (DTX 3). Howard saved a copy of Little's memorandum.

In the Fall of 2014, Howard, along with another inmate, filed an action in the Delaware Court of Chancery against three Delaware Department of Correction ("DOC") officials—the Commissioner of the Department of Correction, the Chief of the Bureau of Prisons, and the Warden of the JTVCC. (Tr. 182:16-20; *see Hall v. Coupe*, 2016 WL 3094406 (Del. Ch. May 25, 2016)). Little was not named as a defendant.

Nearly a year later, in a letter dated July 9, 2015, Howard wrote to Little to inquire about a job in the law library, referring specifically to Little's Sept. 24, 2013, memorandum, and informing Little he had since earned a certification of completion in a paralegal course. (DTX 4). Howard made a handwritten copy of this letter, which he had stamped "Received July 10, 2015 Hearing Office Clerk." Little responded again with a memorandum, dated July 15, 2015, informing Howard there were "currently no positions available." (DTX 5). Howard saved copies of both of these documents.

Sometime around September 2015, an inmate law clerk position became available in the law library. (Tr. 173:9-12). Howard claims he submitted yet another letter of application for that position on Sept. 8, 2015, and produced a purported handwritten copy of that letter as evidence in this case. (Tr. 173:9-17; PTX 6). Although he received written responses the previous two times he submitted letters applying for the position (*i.e.*, DTX 3; DTX 5), Howard testified that on this occasion he did not. (Tr. 128:11-12). Unlike the handwritten copy of his July 2015 letter of application, Howard's copy of his September 2015 letter is not stamped as "received" by the JTVCC Hearing Office Clerk. (Tr. 171:18-25, 172:24-25, 173:1-6; DTX 4; PTX 6).

2

Little does not remember Howard applying for the September 2015 position and testified he did not recognize the copy of the Sept. 8, 2015 letter produced by Howard. (Tr. 236:20-22, 237:6-18). Little conducted some interviews and hired an inmate named William Hudson for the position. (D.I. 98 at 4; Tr. 236:11-19, 305:13-21). Howard testified that sometime after he submitted the letter, upon learning that Hudson had been hired for the position, he talked with Little about why he had not been hired. (Tr. 128:6-25). Howard claims Little told him he had not been considered for the position because he had litigation pending against DOC.[2] (Tr. 128:6-25, 198:1-12). Little does not remember any such conversation. (Tr. 310:19-25, 311:1-11).

Shortly thereafter, on Nov. 2, 2015, Howard filed Grievance No. 322637. (PTX 10). The Grievance was summarized as, "[Howard] claims that Michael Little has imple[me]nted rules for working in the Law Library that usurp the authority of the hiring officer and he wants a fair chance to move up, and is prevented from doing so. He wants sen[i]ority on list put first regardless of lawsuits against DOC." (PTX 10 at D000146). The part of Howard's Grievance written by Howard is five pages long. (*Id.* at D000150-D000154). The Grievance, while consistent with Howard's trial testimony about Little having a policy of not hiring inmates with litigation against DOC (*Id.* at D000150-D000151, D000153), is inconsistent with the testimony that he applied for the September 2015 vacancy announcement.

---

[2] Another inmate, Robert Carroll, testified, reluctantly, that he overhead this conversation between Howard and Little. (Tr. 22:2-16). After some coaxing and leading by Plaintiff's counsel, Carroll eventually testified that he heard Little tell Howard he could not hire him because he had "active litigation." (*Id.*). I have no confidence in Carroll's testimony. While it is quite plausible that Carroll did not want to testify, and it is plausible that he feared retaliation, I am unpersuaded that Carroll's fear was of retaliation from prison officials. Retaliation in prison can come from prison officials or other inmates.

In his Grievance, Howard asserts, "Mich[ae]l Little did not assign the open job position in the law library to me because I have filed a civil action against the DOC" (*Id.* at D000150), but he does not mention ever applying for the September 2015 opening specifically. He explains that he applied for the law clerk position in 2013 but was not considered because he had not satisfied all of Little's stated criteria for the position, and then says he applied again in "early 2015," but was told "no job position was open." (*Id.* at D000152(b)). He then says, "In September 2015 another law library position becomes open," (*Id.* at D000152(d)-D000153) but does not mention applying again for the open position. Instead, a fair reading of his Grievance suggests Howard believed that the September 2015 position should have been automatically offered to him due to his seniority in the work pool list. Indeed, all three of the "Actions" Howard requests in his Grievance are consistent with that expectation:

1. "That I be assigned the job position not filled in the law library; there are 6 positions for an inmate worker in the law library, only 5 is occupied." (*Id.* at D000150).

2. "That sen[i]ority on the work pool list be followed if there is not an algorithm in the computer to keep the work pool list in order as the names are added, then one should be created." (*Id.* at D000150, D000154)

3. "Those on the work pool's list that have a job assignment, when their names come up because of their sen[i]ority on the work pool list for a job or to fill a job vacancy they should be asked if they want the position available, and if not, then consideration goes to the next person on the list." (*Id.* at D000154).

Howard alleges that Little did not consider him for the September 2015 open law library position because he had a lawsuit pending against DOC and that Little's hiring decision was therefore illegal retaliation, in violation of his First Amendment rights. (D.I. 22 ¶¶ 28).

4

## II.  LEGAL STANDARD

To prevail under 42 U.S.C. § 1983, "a prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Sloan v. Pennsylvania Dep't of Corr.*, 800 F. App'x 143, 148 (3d Cir. 2020) (cleaned up). Filing a state court lawsuit is constitutionally protected conduct. *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981).

The causation element usually[3] requires a plaintiff to prove "either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Brant v. Varano*, 717 F. App'x 146, 149-51 (3d Cir. 2017). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

The plaintiff has the burden of proving his retaliation claim under 42 U.S.C. § 1983 by a preponderance of the evidence. *Brooks v. Smith*, 2007 WL 3275266, at *1 (M.D. Pa. Nov. 6, 2007).

---

[3] I say "usually" because here Plaintiff offers direct evidence (*i.e.*, Little's purported policy against hiring inmates with pending lawsuits against DOC); usually a plaintiff relies only upon circumstantial evidence. *See Watson v. Rozum*, 834 F.3d at 422 ("Because motivation is almost never subject to proof by direct evidence," inmates "must rely on circumstantial evidence to prove a retaliatory motive.").

Thus, Howard must demonstrate it is "more likely than not" that he has proved the elements of his claim. *Johnson v. Organo Gold Int'l Inc.*, 146 F. Supp. 3d 590, 593 (D. Del. 2015).

### III. DISCUSSION

#### A. Constitutionally Protected Conduct

The parties agree that Howard's lawsuit against DOC is constitutionally protected conduct. (Tr. 7:23-25). Thus, the first element of the retaliation standard is satisfied.

#### B. Adverse Action/Causation[4]

Howard contends that he suffered an adverse action at the hands of prison officials when Little did not hire him for the September 2015 inmate law clerk opening. A prison official's failure to hire an inmate for a job opening for which he applied would qualify as an adverse action "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." A prison official's failure to hire an inmate for a job opening for which he did not apply would not. Thus, to satisfy the adverse action element of his retaliation claim, Howard must show that he both (1) applied for the position and (2) was not hired for the position.

Here, the expected and usual method of applying for the position of inmate law clerk was to submit a letter of interest in response to a posted opening. (Tr. 224:3-9). Little's testimony on this point is corroborated by the fact that on at least two previous occasions, in 2013 and July 2015, Howard himself applied via letter. While Howard argues that on at least one occasion an inmate

---

[4] At closing argument, the parties disputed whether the issue of whether Howard applied for the job was properly addressed under the "adverse action" or the "causation" elements. Plaintiff stated Defendant had stipulated to there being an "adverse action" in the pretrial order. (*See* D.I. 98 at 8). Defendant responded that he certainly disputed whether Howard had applied for the job. (*See id.* at 6). Both parties have a point. Not being hired is an "adverse action." When the argument is whether the person applied for the job, it seems to me the analysis is going to be the same whether it is considered under the "adverse action" or as a part of the "causation" element.

was hired without having submitted a letter, Little's testimony on the special circumstances surrounding that occasion suggest it was anomalous, and that, normally, a letter would be required for a candidate to be considered. (*See* Tr. 307:12-19, 308:3-18). Little also testified that, due to frequent inmate turnover, he did not hold applications from previous postings to be considered for future openings. (Tr. 235:5-25, 236:1-3). Howard did not present any evidence suggesting that holding old applications to be reviewed for future openings was a common practice by Little (or by anyone else) at JTVCC. Therefore, to show that he applied, Howard must prove he submitted an application specifically regarding the September 2015 opening.

The evidence presented at trial shows that, more likely than not, Howard did not submit a letter applying for the September 2015 position. Thus, I find that Howard has not met his burden in proving he suffered an adverse action, because he did not apply for the position.

As part of his First Request for Admissions, Howard produced three documents he considered relevant to his suit for Little to verify. These were:

- Little's Sept. 24, 2013 memorandum explaining why Howard was not being considered for a position in the law library at that time (*i.e.*, DTX 3),
- A stamped copy of Howard's handwritten July 9, 2015 letter to Little requesting a position in the law library (*i.e.*, DTX 4), and
- Little's July 15, 2015 memorandum informing Howard there were no open positions in the law library at that time (*i.e.*, DTX 5).

(D.I. 37, Requests 26-29, docketed Nov. 6, 2019 Tr. 175:10-13).

Howard did not produce a copy of his purported September 2015 letter of application until after he was deposed for this lawsuit on Dec. 4, 2019. (Tr. 175:10-25; 176:1-12; *see* D.I. 41). The only explanation Howard gave at trial for why he did not include that letter with his initial

7

production of relevant documents was that he "forgot." (Tr. 176:11-14). Howard offered no explanation for why the copy of his September 2015 letter was not stamped as received like the copy of his July 2015 letter. Finally, in the Grievance Howard filed in November 2015 regarding Little's hiring practices, he references the three exhibits (DTX 3; DTX 4; DTX 5) that he later produced when he made his First Request for Admissions. (PTX 10 at D000152(b) & (d)). He does not even obliquely hint at any application letter from September 2015. (*Id.* at D000152-D000153).

The combined weight of (1) Little's testimony that he did not recognize Howard's September 2015 letter, (2) Howard's delay in producing the letter, (3) the letter's lack of a "received" stamp, (4) the absence of any memorandum from Little acknowledging receipt of the application, and (5) Howard's failure to mention the letter in the Grievance he filed on the subject of, and nearly contemporaneously with, the events at issue here, suggests that, more likely than not, Howard did not submit a letter of application in September 2015. Because Howard has not proven that he applied for the September 2015 position, he has not shown that he suffered an adverse action and, consequently, has not met his burden in proving his retaliation claim.

Plaintiff argues, in the alternative, that even if he did not specifically apply for the vacancy in September 2015, Little's failure to hire him for the opening was still an adverse action, because on at least one previous occasion, Little had hired an inmate law clerk without requiring an application. This argument is unconvincing. As discussed above, on the one occasion Little remembered hiring an inmate without an application, the hiring decision was made under unique circumstances.[5] The testimony makes clear that the hiring without an application was because

---

[5] Little testified that on one occasion, he agreed to hire an inmate who had previously been employed in the JTVCC chapel without requiring an application from the inmate, explaining, "They contacted me and they wanted to get him out of the chapel and asked me if I would give him a job in the Law Library." (Tr. 308:8-14).

some other JTVCC official or officials wanted a place to put an inmate. There is no resemblance to Howard's current argument, which is that Little on his own initiative should have hired him without an application.

Howard argues that Robert Carroll was also hired without submitting an application. At trial, however, Carroll merely testified that he could not "recall" writing a letter or memo to apply six years ago. (Tr. 17:23-25, 18:1-3). I do not consider that a sufficient basis to find that Carroll was hired without an application. Even assuming Carroll was hired without an application, however, Carroll's situation would have been different. He had been employed previously in the law library. (Tr. 17:7-25, 18:1-6). His work product would have been known, and there might have been reasons why Little knew or suspected that he wanted to come back.

At most, these two examples (assuming that the second was proven) support a finding that hiring inmates who had not submitted applications was the exception, not the rule. They would not offer anything to support Howard's argument that he should have been considered even though he had not applied.

Finally, Howard did not offer any evidence at trial to suggest that an automatic work pool assignment system like the one he requested in his Grievance was followed or had ever existed in the law library. In the absence of such evidence and in the absence of any evidence suggesting there was a practice to hold old applications for future consideration, I am not persuaded that Howard was an applicant for the job that went to Hudson, and therefore Howard did not suffer an adverse action when he was not hired. Or, stated differently, any unconstitutional policies that Little carried out were unrelated to, and therefore not the cause of, Howard not getting the job.

9

## C. Causation

The causation analysis (or the remainder of the causation analysis, if the above adverse action analysis is more properly considered to be causation analysis) is moot, as Howard has not shown he suffered an adverse action.[6]

## IV.   CONCLUSION

For these reasons, I find that Plaintiff has not proven his claim of retaliation under 42 U.S.C. § 1983.

An appropriate order will issue.

---

[6] I nevertheless reaffirm two findings that I made, or strongly hinted at, during the trial.
   One, Howard had the burden to prove damages. Since he had a higher paying job (or jobs) in September 2015 than the law library job, and he continued to hold the higher paying job(s) at least through the end of 2016 (DTX 8), he proved no actual lost wages damages.
   Two, Hudson applied for the job and Howard did not. If I had found that Howard had applied for the job, and that First Amendment retaliation was the reason he was not considered for the job, Defendant offered no meaningful proof that Hudson was better qualified for the job than Howard, or even that he was as qualified, and I would have to find that Defendant failed to show that Hudson would have gotten the job even if Howard had been fully and fairly considered.